UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**PENNY SUE MARVIN**,                          Case Number 3:11 CV 2170

    Plaintiff,                                    Judge Jack Zouhary

    v.                                            REPORT AND RECOMMENDATION

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.                                    Magistrate Judge James R. Knepp II

### Introduction

Plaintiff Penny Sue Marvin filed a Complaint (Doc. 1) against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny disability insurance benefits (DIB) and supplemental security income (SSI). The district court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

### Procedural Background

Plaintiff filed applications for DIB and SSI, alleging disability since January 9, 2008.  (Tr. 130-33).  Plaintiff asserts she is disabled due to coronary artery disease (CAD), hypertension, chronic obstructive pulmonary disorder (COPD), diabetes mellitus, and obesity. (Tr. 13, 153). Plaintiff's claims were denied initially (Tr. 75, 78) and on reconsideration (Tr. 85, 88). Plaintiff requested a hearing before an administrative law judge (ALJ). (Tr. 93). After a hearing, where Plaintiff, her attorney, and a vocational expert (VE) appeared, the ALJ denied Plaintiff's claims.  (Tr. 8-24, 31). The ALJ found Plaintiff's impairments were severe but she was capable of performing limited

sedentary work. (Tr. 14, 18); 20 C.F.R. §§404.1567(a), 416.967(a). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981; 416.1455, 416.1481. On October 13 2011, Plaintiff filed the instant case. (Doc. 1).

**Factual Background**

*Marion General Hospital Emergency Room*

Plaintiff periodically sought medical treatment at the Marion General Hospital emergency room for chest pain and shortness of breath.

On October 4, 2007, Plaintiff presented for dyspnea and swelling in her legs. (Tr. 243). Plaintiff was diagnosed with COPD, congestive heart failure, and diabetes; however, her symptoms were described as moderate and Plaintiff was discharged. (Tr. 243, 256).

On October 23, 2007, Plaintiff underwent pharmacological cardiac arrest testing, which showed an abnormal tracer uptake in the lateral and septal wall of the left ventricle. (Tr. 253). Despite multiple requests, Plaintiff failed to return to the hospital for resting images and her heart study was not completed. (Tr. 253).

On January 10, 2008, Plaintiff sought treatment for chest pain. (Tr. 234). Plaintiff's x-ray revealed clear lungs and her pulmonary vessels were within normal limits. (Tr. 262). Plaintiff's treating physician, Dr. Rajkotwala, admonished Plaintiff for being non-compliant with follow-up care, further noting he told Plaintiff during her last emergency room visit she needed to have regular office care visits. (Tr. 263). Plaintiff was discharged the following day and ordered to follow-up with Dr. Rajkotwala. (Tr. 265). Plaintiff's diagnosis was acute exacerbation of COPD, congestive heart failure, hypertension, diabetes mellitus, and morbid obesity. (Tr. 265, 288).

2

On February 5, 2008 and May 9, 2008,  Plaintiff sought treatment for shortness of breath. (Tr. 238, 248). Plaintiff's chest x-rays on both occasions revealed clear lungs. (Tr. 247, 266). Plaintiff's condition was normal, her symptoms were described as moderate, and she was discharged with breathing medication and instructions to follow-up with her primary care physician. (Tr. 240,  248-51, 266).

On November 19, 2008, Plaintiff presented for chest pain. (Tr. 302). A chest x-ray revealed Plaintiff had clear lungs and her heart was normal. (Tr. 302). Plaintiff's condition was not evident but the examining physician suspected acute coronary disease and Plaintiff was discharged. (Tr. 310).

On March 9, 2009, Plaintiff presented with sharp chest pain and shortness of breath. (Tr. 394). Plaintiff  stated she had not taken her medication for three to four months. (Tr. 394, 397). Plaintiff's echocardiograph did not reveal ischemia, and cardiac enzymes were negative; nonetheless, Plaintiff was admitted for further evaluation and medication management. (Tr. 394).  Plaintiff underwent a cardiac evaluation, including a stress test showing no signs of wall motion abnormalities or ventricular dysfunction. (Tr. 402). Plaintiff's chest pain resolved during her hospital stay. (Tr. 436). On March 12, 2009, Plaintiff was discharged with specific instructions to comply with her medication and follow up with her doctor. (Tr. 398).

On April 2, 2010, Plaintiff presented for chest pain in her substernal area. (Tr. 413). On examination, the treating physician noted Plaintiff was "lying in bed in no distress" with "[n]o chest pain." (Tr. 414). Plaintiff's echocardiograph revealed overall structural normalcy with left atrial enlargement and left ventricle hypertrophy. (Tr. 420, 422). Plaintiff's chest x-ray showed no acute cardiopulmonary disease. (Tr. 416). After myochardial infraction was ruled out, Plaintiff was discharged. (Tr. 416).

On April 23, 2010, Plaintiff was admitted to the hospital with chest pain. (Tr. 437). Plaintiff's chest x-ray was normal. (Tr. 440). On examination, the treating physician noted Plaintiff was lying in bed with no distress and no chest pain. (Tr. 443). It was noted Plaintiff's condition was likely non-cardiac and she should follow-up with her primary care physician. (Tr. 443). However, Plaintiff felt she needed further evaluation. (Tr. 443). On April 26, 2010, Dr. Singh recommended a heart catheterization procedure with a coronary stent due to Plaintiff's recurrent hospitalizations. (Tr. 437, 440, 445). Plaintiff was discharged the next day and ordered to follow up with her primary care physician. (Tr. 438).

On May 23, 2010, and July 6, 2010, Plaintiff was admitted for chest pain and discharged after tests came back normal revealing no cardiac abnormalities. (Tr. 458, 460, 496).

On July 20, 2010, Plaintiff was admitted for chest pain after she began sweating profusely and complained of chest pain during a routine office visit with her primary care physician. (Tr. 514). Plaintiff reported feeling great for about a month and half after her stent placement but at the time she felt only 75 percent better. (Tr. 514). Plaintiff underwent another cardiac catheterization to assess her coronary artery condition. (Tr. 695). Plaintiff was treated with another stent and discharged with a prescription for Plavix. (Tr. 695-96).

On October 10, 2010, Plaintiff presented for chest pain, a headache, and left eye irritation. (Tr. 634). Plaintiff stated her chest pain was due to stress, not her typical angina, because she had to visit her mother at the hospital at night after babysitting five children during the day. (Tr. 634). Plaintiff was discharged when all tests, including an EKG, chest x-ray, and tomography scan, came back normal. (Tr. 634-35).

***Treating Physicians***

In November 2008, Dr. Rajkotwala stated she had been treating Plaintiff since April 2003 and had last seen her in February 2008. (Tr. 323). Dr. Rajkotwala noted Plaintiff had suffered from diabetes mellitus, hypertension, anxiety, depression, and obesity for over 10 years, further noting Plaintiff's activities are limited by these illnesses to an unspecified degree. (Tr. 323-24). Dr. Rajkotwala noted Plaintiff's non-compliance somewhat interfered with her treatment. (Tr. 324).

Center Street Clinic is referenced as Plaintiff's primary care practice sporadically in the record. (Tr. 594, 638). Plaintiff asserts she presented to her primary care physician, Dr. Tsalikova, at the Center Street Clinic 18 times between August 20, 2009 and December 3, 2010. (Doc. 13, at 11). However, the record does not support Plaintiff's assertion. Rather, the record reflects that between August 29, 2009 and September 24, 2010, Plaintiff presented to Dr. Tsalikova nine times. (Tr. 639, 645, 647, 648-49, 650, 657, 661).  These visits provided minimal information regarding Plaintiff's conditions and the majority were follow-ups from Plaintiff's hospital visits. There is no record of Dr. Tsalikova rendering an opinion on Plaintiff's limitations, objective or otherwise, other than stating, on a prescription form, Plaintiff was "unemployable." (Tr. 712).

***Independent Medical Evaluations***

On February 20, 2009, Dr. Gilliam examined Plaintiff's physical condition. (Tr. 328). On examination,  Plaintiff was 67 inches tall and weighed 327 pounds. (Tr. 328). Plaintiff demonstrated an antalgic gait with no use of ambulatory aids. (Tr. 328). Plaintiff had a rapid heartbeat and high blood pressure. (Tr. 328). Plaintiff had decreased breath sounds, wheezes, rhonchi, and prolonged expiration with no rales. (Tr. 328). Dr. Gilliam noted Plaintiff's diagnoses of hypertension, tachycardia, diabetes, asthma, morbid obesity, depression, and low back pain. Nonetheless, Dr.

5

Gilliam found Plaintiff was capable of performing tasks comparable to sedentary work. (Tr. 68-69, 328). In April 2009, Dr. Gilliam also reviewed Plaintiff's pulmonary function testing and found the test to show obstructive and restrictive defects within the normal range. (Tr. 368-72).

On March 23, 2009, Dr. Dubey, an examining psychologist, evaluated Plaintiff's mental condition. (Tr. 347). Dr. Dubey found Plaintiff's appearance, behavior, and demeanor were normal; however, Plaintiff reported symptoms consistent with mild depression. (Tr. 350).  Her cognitive functioning, speech, and emotional reaction were all within the normal range. (Tr. 350-51). Plaintiff reported her daily activities included watching television, cooking, sleeping, cleaning, and doing laundry. (Tr. 351). Dr. Dubey opined Plaintiff had mild limitations in her abilities to understand and maintain attention; however, Plaintiff was capable of understanding, remembering, and following instructions related to simple, complex, and multi-step tasks. (Tr. 353).

### State Agency Physicians

In March 2009, Dr. Hill, a state agency physician, reviewed Plaintiff's medical records to assess her physical residual functional capacity (RFC). (Tr. 373-80). Dr. Hill summarized the Plaintiff's medical reports and Plaintiff's reports to the agency and noted inconsistencies in Plaintiff's allegations regarding her daily activities. (Tr. 340, 375). Dr. Hill noted Plaintiff suffered from obesity, hypertension, and diabetes mellitus but stated these conditions were stable and did not limit her. (Tr. 378). Dr. Hill indicated Plaintiff could lift up to 50 pounds, stand or walk for about six hours, and sit for about six hours. (Tr. 336). She could frequently climb ramps and stairs but never climb ladders, ropes or scaffolds. (Tr. 337).

In April 2009, Dr. Steiger, a state agency psychologist, reviewed Plaintiff's medical records and concluded Plaintiff's mental impairments were not severe. (Tr. 354-67).

***ALJ's Decision and VE Testimony***

The ALJ found Plaintiff had a variety of severe impairments: CAD, hypertension, COPD, diabetes mellitus, and obesity. (Tr. 13). However, after thoroughly reviewing Plaintiff's medical treatment history, including opinions from Plaintiff's treating physicians, independent medical evaluators, and state agency physicians, the ALJ found Plaintiff was capable of performing limited sedentary work. (Tr. 13-17). While the ALJ found independent medical evaluations well supported by the evidence in the record, he did give one of Plaintiff's treating physicians some weight. (Tr. 21-22). The ALJ stated, "Dr. Rajkotwala's opinion, while vague, is generally supported by the evidence in the record and I give his opinion some weight. It should also be noted that Dr. Rajkotwala's opinion is consistent with the [RFC] finding that limits the [Plaintiff] to less that a full range of sedentary work due to her illness." (Tr. 22).

The ALJ found Plaintiff unable to perform any past relevant work as a bakery and deli clerk or childcare worker. (Tr. 22). However, based on VE testimony, the ALJ found Plaintiff was capable of a significant number of jobs in the regional economy. (Tr. 23). The VE also testified Plaintiff was able to perform these jobs with an absence rate of one day per month. (Tr. 69).

## Standard of Review

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health &*

7

*Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if

supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474

F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a

preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as

substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*,

336 F.3d 469, 477 (6th Cir. 2003).

## Standard for Disability

Eligibility for SSI and DIB is predicated on the existence of a disability. 42 U.S.C. §§ 423(a);

§ 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result

in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows

a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a

claimant is disabled:

1.   Was claimant engaged in a substantial gainful activity?

2.   Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.   Does the severe impairment meet one of the listed impairments?

4.   What is claimant's residual functional capacity and can claimant perform past relevant work?

5.   Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One

8

through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

### Discussion

Plaintiff raises two alleged errors:

1. The ALJ erred by disregarding the disability opinion of Plaintiff's primary care physician, Dr. Tsalikova, that Plaintiff is disabled due to multiple impairments; and

2. The ALJ erred by calculating an absence rate inconsistent with unskilled sedentary work.

(Doc. 13, at 1). For the following reasons, Plaintiff's assertions are not well-taken.

### *Treating Physician Rule*

An ALJ must weigh medical opinions in the record based on certain factors. 20 C.F.R. § 404.927(d). In determining how much weight to afford a particular opinion, an ALJ must consider: (1) examining relationship; (2) treatment relationship – length, frequency, nature and extent; (3) supportability; (4) consistency; and (5) specialization. *Id.*; *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).

Generally, the medical opinions of treating physicians are accorded greater deference than non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able

to provide a detailed, longitudinal picture of [a claimant's] medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)). A treating physician's opinion is given "controlling weight" if supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Id.* (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

In addition, even if the treating physician's opinion is not entitled to "controlling weight," there is nevertheless a rebuttable presumption that it deserves "great deference" from the ALJ. *Rogers*, 486 F.3d at 242. Importantly, the ALJ must give "good reasons" for the weight he gives a treating physician's opinion, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. Failure to do so requires remand. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409–10 (6th Cir. 2009).

Good reasons are required even when the conclusion of the ALJ may be justified based on the record as a whole. The reason-giving requirement exists, in part, to let claimants understand the disposition of their cases, particularly in cases where a claimant knows her physician has deemed her disabled and might be bewildered when told by an ALJ she is not, unless some reason for the agency's decision is supplied. *Wilson*, 378 F.3d at 544 (quotations omitted). "The requirement also ensures the ALJ applied the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id*.

Medical opinions are defined as "statements from physicians . . . that reflect judgements about the nature and severity of [a claimant's] impairments, including . . . symptoms, diagnosis, and

prognosis, what [a claimant] can still do despite the impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §§404.1527(a); 416.927(a). The regulations provide that some statements by physicians – specifically, statements from medical sources that you are "disabled" – are not considered medical opinions, but rather administrative findings that would direct the determination of disability. 20 C.F.R. §§404.1527(d), 416.927(d); *see also* SSR 96-5p, 1996 WL 374183. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine you are disabled. 20 C.F.R. §§404.1527(d), 416.927(d) Rather, these opinions are issues reserved to the Commissioner and an ALJ is not required to give these opinions controlling weight or special significance. *Id*. Nonetheless, an ALJ may not disregard them. "Treating source opinions on issues reserved to the Commissioner will never be given controlling weight. However, the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)." SSR 96-5p, 1996 WL 374183, at *6; *see also Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009).

Plaintiff contends the ALJ erred by disregarding the disability opinion of Dr. Tsalikova. Plaintiff's claim centers on note authored by Dr. Tsalikova on a prescription pad listing Plaintiff's "uncontrolled" conditions, further noting Plaintiff is "unemployable." (Tr. 712). Defendant argues the ALJ was not required to consider Dr. Tsalikova's opinion because opinions regarding disability are issues reserved to the Commissioner. (Doc. 16, at 14). This statement is partially correct; however, opinions by treating sources on issues reserved to the Commissioner "must never be ignored, and the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)." SSR 96-5p, 1996 WL 374183, at *1. Nonetheless, failure to mention Dr. Tsalikova's disability determination was harmless error.

11

***Harmless or Not***

The Sixth Circuit requires reverse and remand where the ALJ fails to give good reasons on the record for according less weight to treating sources, unless the error is a harmless *de minimis* procedural violation. *Blakely*, 581 F.3d at 409. Harmless error can occur in three instances: 1) if a "treating source's opinion is so patently deficient that the Commissioner could not possibly credit it" ; 2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or 3) "where the Commissioner has met the goal of §404.1527(d)(2) - the provision of the procedural safeguard of reasons - even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (citing *Wilson*, 378 F.3d at 547).

For the third instance, the Sixth Circuit articulated an indirect attack rule in very limited circumstances, while noting "we continue to believe that '[w]hen remand would be an idle and useless formality' courts are not required to 'convert judicial review of agency action into a ping-pong game.'" *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005); *see Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004). While the court reversed and remanded in *Hall*, it explained when the third instance may amount to harmless error as follows:

> As applied to this case, the ALJ could have met the goal of providing good reasons [for dismissing the medical opinion of the treating physician regarding the claimant's back ailment] by either his analysis of Dr. Caudill's other opinions or his analysis of [claimant's] back problems in general. Such analyses would perhaps adequately address Dr. Caudill's opinion about [claimant's] back pain by indirectly attacking the 'supportability' of the doctor's opinion, §404.1527(d)(3), or the 'consistency' of his opinion with the record as a whole, §404.1527(d)(4), both of which are grounds for rejecting a treating source opinion.

*Hall*, 148 F. App'x at 470.

Shortly after *Hall*, the Sixth Circuit applied its indirect attack rule in *Nelson*. In *Nelson*, the

12

treating physician in question provided reports and filled out disability questionnaires detailing the plaintiff's limitations related to his condition; however, the ALJ neglected to give them controlling weight, nor did he explain why. 195 F. App'x at 464, 466. The ALJ did discuss the physician's reports but focused on the claimant's statements made to the physician, not the physician's opinion regarding the claimant's condition. *Id*. The Sixth Circuit declined to remand because the ALJ's assessment of the claimant's health problems adequately addressed the treating physician's opinion by indirectly attacking both its consistency and supportability with other evidence in the record. *Nelson*, 195 F. App'x at 470. Specifically, the ALJ thoroughly evaluated the claimant's mental impairments – which attacked the doctor's supportability – and made clear the opinion evidence was not consistent with the record as a whole, thus attacking its consistency. *Id*. at 470-71.

The undersigned notes the importance of the treating physician rule and the Sixth Circuit's rare application of the harmless error exception. However, application in the instant case is appropriate. First, the treating physician rule was designed for medical opinions, not issues reserved to the Commissioner. Stated otherwise, the ALJ had grounds to reject Dr. Tsalikova's opinion because it was an issue reserved to the Commissioner. More importantly, while the treating physician rule was not strictly followed, its motivation was. The Plaintiff was never deprived of her ability to understand the disposition of her case because the ALJ provided clear, comprehensible, and thorough reasoning in finding that Plaintiff was capable of performing limited sedentary work. The ALJ adequately addressed Dr. Tsalikova's one word disability opinion by indirectly attacking it with contrary evidence in the record regarding Plaintiff's functional capacity. (Tr. 19-22). Notably, the ALJ provided more detailed reasoning regarding Plaintiff's condition than Dr. Tsalikova. The ALJ not only found the impairments listed by Dr. Tsalikova were severe, but discussed objective medical evidence relating to those conditions with laboratory findings and objective evidence from

13

the record. The ALJ referenced Plaintiff's three stent procedures, but noted the majority of her hospital visits revealed Plaintiff's condition was normal. (Tr. 19). In addition, while referencing Plaintiff's treatment notes from the Center Street Clinic, the ALJ noted Plaintiff's hypertension was benign and her heart rate was normal. (Tr. 19). The ALJ discussed Plaintiff's heart condition and diabetes, noting laboratory findings and medical opinions of treating physicians revealed Plaintiff's functioning was well-preserved and controlled. (Tr. 19-21) Additionally, the ALJ discussed Plaintiff's credibility regarding her daily activities, which the record indicates are not as limited as Plaintiff claims. (Tr. 21). Plaintiff testified she only occasionally helped with her five grandchildren; however, she reported to the hospital she was stressed out because she had to watch her grandchildren all day, without noting any assistance. (Tr. 21). The ALJ noted "[w]hile [Plaintiff] tried to minimize her activity [in] relation to child care of her grandchildren, the record shows otherwise." (Tr. 21).

Plaintiff rests her entire argument on a note authored by Dr. Tsalikova on a prescription pad stating that Plaintiff is "unemployable". The *Nelson* court found harmless error when the treating physicians discussed the plaintiff's conditions and limitations at length through reports or disability questionnaires. In addition, *Nelson* involved medical opinions, not disability determinations reserved to the Commissioner. In the instant case, Dr. Tsalikova did not provide reports or objective medical findings regarding Plaintiff's condition. Dr. Tsalikova merely provided a bare-bones list of Plaintiff's medical conditions before concluding Plaintiff was "unemployable."  For these reasons, the ALJ's failure to mention Dr. Tsalikova's disability opinion was harmless.

***Absence Rate***

Plaintiff alleges her documented hospital visits aggregately evidence a projected absence rate of more than one day per month, which is not consistent with limited sedentary work. However, the

14

record does not support Plaintiff's assertion. Plaintiff alleged a disability onset date of January 9, 2008. Between 2007 and the ALJ hearing March 4, 2011, Plaintiff was hospitalized or treated for symptoms relating to her conditions for a period totaling 17 days. Plaintiff alleges she was hospitalized for four days in 2011; however, this evidence is not in the record. Nonetheless, even lending credence to the alleged 2011 visits, Plaintiff still cannot prove she had an absence rate of more that one day per month. In 2007, Plaintiff was hospitalized for two days. In 2008 and 2009, Plaintiff was hospitalized for four days each. In 2010, Plaintiff was hospitalized for seven days. In 2011, Plaintiff was allegedly hospitalized for four days. This shows an absence rate well short of one day per month.

## Conclusion and Recommendation

Following review of the arguments presented, the record, and the applicable law, the Court finds the Commissioner's decision denying SSI and DIB benefits supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be affirmed.

 s/James R. Knepp II
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).